UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMIAH FOLSOM HERBERT,

                Plaintiff,

        -against-

SERGEANT GEORGE, et al.,

                Defendants.

**OPINION AND ORDER**

24-CV-1780 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Plaintiff Jeremiah Folsom Herbert ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Sergeant Jayson George ("George"), Sergeant Romeo Riley ("Riley"), Sergeant Alicia Johnson ("Johnson"), Officer M. Salas ("Salas"), and Correction Officer Sakaya Cameron ("Cameron," and collectively, "Defendants") for violating his constitutional rights while he was incarcerated at Sing Sing Correctional Facility ("Sing Sing") in Ossining, New York. (Doc. 1, "Compl."). Specifically, Plaintiff presses claims for (i) failure to protect, (ii) excessive force, (iii) retaliation, (iv) deliberate indifference to medical needs, and (v) unconstitutional conditions of confinement. (*See generally id.*).

    On September 18, 2024, Defendants filed their letter motion requesting a pre-motion conference and leave to file this motion to dismiss. (Doc. 27). On September 27, 2024, the Court waived the pre-motion conference requirement and set a briefing schedule for the Defendants' motion to dismiss. (Doc. 28). On October 15, 2024, Plaintiff, in response to Defendants' pre-motion letter correspondence, filed a letter explaining why this action should not be dismissed. (Doc. 30, "Pl. Letter"). Defendants, pursuant to the briefing schedule, filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on October 25, 2024. (Doc. 31; Doc. 32, "Def. Br."). Plaintiff filed opposition papers on November 12, 2024 (Doc. 34, "Pl. Br."), and

Defendants' motion to dismiss was fully briefed with the filing of their reply on December 5, 2024 (Doc. 35, "Reply").[1]

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.[2]

## BACKGROUND

Plaintiff alleges that on January 29, 2024, while in transit from Attica Correctional Facility ("Attica"), he was "assaulted without provocation" when he arrived at Sing Sing by other inmates at Sing Sing (the "Assault"). (Compl. at 7, 11; Def. Br. at 5).[3] As a result of the Assault, Plaintiff alleges he suffered a broken nose, impaired vision, cuts to the face, and a broken jawbone. (Compl. at 8, 11). During the Assault, Plaintiff claims Defendants failed to intervene and protect him, and refused to transfer Plaintiff to protective custody thereafter. (*Id.* at 5, 7-9, 11-12). Later that day, Plaintiff was taken to Westchester Medical Center for treatment and examination, including x-rays of his injured nose. (*Id.* at 6-8, 11). Despite having been treated at Westchester Medical Center,

---

[1] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))). Accordingly, the Court considers on this motion the additional allegations relevant to this motion in Plaintiff's letter (Doc. 30) and Opposition Brief (Doc. 34), to the extent they are consistent with Plaintiff's Complaint.

[2] Defendant Salas has not answered or otherwise responded in this action as of the time of this filing; and according to the docket, is not represented by private counsel or the New York State Attorney General's Office ("OAG"). However, OAG requests that the Court "sua sponte dismiss the allegations against Defendant Salas because the reasons why Plaintiff's claims fail against the other Defendants also apply to Defendant Salas." (Doc. 32 at 1 n.1). As detailed *infra*, the claims against the Defendants, including Salas, are the same, and thus are all subject to the same administrative exhaustion requirements. Under 28 U.S.C. § 1915(e)(2)(B)(ii), where a case is brought *in forma pauperis*, "the court shall dismiss the case at any time if the court determines . . . the action . . . fails to state a claim on which relief may be granted." Accordingly, the allegations against Salas are dismissed for the same reasons the claims are dismissed against the moving Defendants, as discussed *infra*. *See Crichlow v. Doccs*, No. 18-CV-03222, 2022 WL 6167135, at *13-14 (S.D.N.Y. Oct. 7, 2022) (dismissing other named, but non-moving, defendants from the action "for the same reasons as the dismissals granted" for the moving defendants, as the claims against all defendants arose from the same set of allegations).

[3] Citations to the parties' briefing correspond to the pagination generated by ECF.

Plaintiff alleges that he continued to experience pain from his injuries, yet, was not provided with any follow-up treatment. (*Id.* at 7, 9, 11-13).[4] Plaintiff claims that on January 30, 2024 and February 2, 2024, he "did file under Docs Directive 4040 properly filed grievances and complaints with regards to Constitutional violations imposed; under 42 U.S.C. 1997(e)" and that "exhaustion remedies were indeed followed." (*Id.* at 6) (cleaned up).

## STANDARD OF REVIEW

I.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[5] A claim is plausible on its face "when the ple[d] factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[4] Plaintiff alleges that after the Assault, Defendants used "excessive force" against him, specifically, on February 2, 2024, when Defendants allegedly physically assaulted him while he was handcuffed in a medical unit. (Pl. Br. at 4, 6-10). While Plaintiff asserts these specific allegations for the first time in his Opposition Brief, Plaintiff does state in the Complaint that the Defendants "laughed at Plaintiff[']s] injuries and used retaliation of Feb. 3rd + 4th, 2024 upon Plaintiff inside medical unit at Sing Sing." (Compl. at 9) (cleaned up). Construing the *pro se* Plaintiff's allegations liberally, as we must, and as these two separate sets of allegations could arguably be construed to be consistent, the Court will consider the assertions in Plaintiff's Opposition Brief as set forth above. *See Vail*, 68 F. Supp. 3d at 427.

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "are often 'unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Here, where Defendants move to dismiss based upon a yet to be pled affirmative defense of exhaustion under the Prison Litigation Reform Act ("PLRA"), the Court may consider the affirmative defense if it is "clear from the face of the Complaint that Plaintiff failed to exhaust" his administrative remedies. *See Gunn v. Beschler*, No. 16-CV-06206, 2020 WL 7398751, at *4 (W.D.N.Y. Dec. 17, 2020). Such clarity exists here with respect to Plaintiff's claims.

## II.  Documents Considered

Plaintiff submitted his administrative grievance complaints and associated documents as attachments to the Complaint and Opposition Brief. (*See* Compl. at 14-22; Pl. Br. at 16-31). Given the liberality afforded *pro se* litigants, "in deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to his opposition papers." *Davis v. Cnty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) (internal citations and quotation marks omitted), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). "[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be

taken[.]" *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). The documents that Plaintiff attached to the Complaint are consistent with the allegations therein, as Plaintiff references the grievance procedure and his belief that he properly completed administrative exhaustion (Compl. at 6, 13), as well as his treatment at the Westchester Medical Center (*id.* at 6-7, 11, 12). Accordingly, the Court may, and does, consider these attachments in deciding this motion.

## ANALYSIS

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); and it is "'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies," *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cnty.*, No. 19-CV-03052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by

6

the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)).

Generally, as an inmate in the Department of Corrections and Community Supervision's ("DOCCS") custody, Plaintiff was required to follow a three-step process to exhaust the grievance process completely. *See Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining DOCCS' three-step grievance process). First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.4, 701.5(a)-(b). Second, should the inmate be dissatisfied with the conclusion reached by the IGRC, he may appeal that decision to the superintendent of the facility within seven calendar days of receiving the IGRC's determination. *Id.* § 701.5(c)(1). Finally, if the superintendent's conclusions are unfavorable, the inmate may appeal that decision to the Central Office Review Committee ("CORC") within seven calendar days of receiving the superintendent's determination. *Id.* § 701.5(d)(1)(i). CORC then has 30-days by which to provide a response to the appeal. *Id.* § 701.5(d)(3)(ii). Administrative exhaustion requirements are therefore satisfied either upon CORC's response to the appeal within the 30-day timeline by which it must respond, or once the 30-day window expires with no response. *See Hayes v. Dahlke*, 976 F.3d 259, 270-71 (2d Cir. 2020). Both the correctional facility's Superintendent and CORC are required to "date stamp all" grievances or appeals forwarded to them for review, N.Y. Comp. Codes R. & Regs. tit. 7 §§ 701.5(c)(3), 701.5(d)(3)(i), and maintain files "for the current calendar year plus the previous four calendar years," *id.* § 701.6(k)(3).

Plaintiff affirmatively pled in the Complaint that on "Jan. 30th, 2024 and Feb. 2nd, 2024 [he] did file under Docs Directive 4040 properly filed grievances and complaints with regards to

constitutional violations imposed;" and that the "exhaustion remedies were indeed followed." Further, Plaintiff also pled that "[u]nder 42 U.S.C. 1997(e)(a)," he "follow[ed] proper grievance procedure[s] . . . according to directive 4040," and that he filed grievances both at Sing Sing and at Attica. (Compl. at 6, 8, 12-13) (cleaned up). Plaintiff included as an attachment to the Complaint an "Incarcerated Grievance Program Complaint Form" with Grievance No. 0469-24, dated February 9, 2024, which was "received" by Attica on February 15, 2024 (the "Attica Grievance"). (*Id.* at 15-16). Additionally, in the letter filed in opposition to Defendants' pre-motion conference letter (Pl. Letter at 7), and his Opposition Brief (Pl. Br. at 4, 6-9, 11, 15), Plaintiff further alleges that he properly followed the administrative exhaustion procedures under 42 U.S.C. § 1997(e)(a).

However, Plaintiff has not satisfied the administrative exhaustion procedures, as there is no indication that Plaintiff had progressed beyond even the first step of the three-step process, prior to filing the Complaint. Plaintiff commenced this action on February 24, 2024 (Compl. at 21). *Ellis v. Kim*, No. 23-CV-05309, 2024 WL 4882702, at *4 (S.D.N.Y. Nov. 25, 2024) ("[U]nder the prison mailbox rule, the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed."); *see also Walker v. Jastremski*, 430 F.3d 560, 561 (2d Cir. 2005) (explaining prison mailbox rule). The only purported grievance form that Plaintiff attaches to the Complaint (and Opposition Brief, for that matter), is the Attica Grievance. Plaintiff does not attach the alleged Sing Sing Grievances that he purportedly filed on January 30 and February 2, 2024 (the "Sing Sing Grievances"). (Compl. at 8). Construing the pleadings liberally, the circumstances that led to the filing of the Complaint took place between January 29 and February 4, 2024 (Compl. at 6-8), and the Complaint was deemed filed on February 24, 2024 (*id.* at 21). This timing precludes the possibility that Plaintiff could have possibly exhausted his administrative remedies by way of

8

either the Sing Sing Grievances or the Attica Grievance before filing this action. *See Price v. City of New York*, No. 11-CV-06170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (dismissing an inmate action on a Rule 12(b)(6) motion and concluding that "given the timelines for the grievance procedures outlined in the DOC's regulations, it would have been impossible for [the plaintiff] to do so in the 21 days between the alleged incident and the filing of his complaint"); *see also Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *6 (S.D.N.Y. June 11, 2021) (holding that where the alleged attack on the plaintiff took place a mere sixteen days prior to the filing of the pleading, it "simply would not have been possible" for administrative exhaustion to have been properly completed).

Plaintiff, in an effort to bolster his pleadings, attaches to the Opposition Brief what appears to be an updated and more fulsome version of his Attica Grievance, as it contains the same number identifier (0469-24) as that attached to his Complaint. (*Compare* Compl. at 15, *with* Pl. Br. at 17). Assuming, without deciding, that it is appropriate for the Court to consider these documents, this version of the documentation clarifies that the Superintendent's denial of the grievance took place on June 24, 2024, and that Plaintiff did not appeal this decision to CORC until August 2, 2024. (Pl. Br. at 19-23). There is no indication that CORC responded, based on the documents Plaintiff provided.

However, if CORC failed to respond, the earliest Plaintiff could have filed the Complaint, to be in compliance with the administrative exhaustion procedures, would have been September 1, 2024. *See Hayes*, 976 F.3d at 270-71. Assuming, *arguendo*, that Plaintiff completed the exhaustion process during the pendency of this litigation, it is "well-settled" that "subsequent exhaustion after suit is filed is insufficient and will not save a case from dismissal." *Id.* 976 F.3d at 272.

In light of the foregoing, the affirmative defense of failing to comply with the PLRA is clear from the face of the pleadings, and therefore Plaintiff's claims are dismissed.[6]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 31, mail a copy of this Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          April 30, 2025

_____
PHILIP M. HALPERN
United States District Judge

---

[6] Given the conclusions reached herein, the Court need not and does not reach Defendants' remaining arguments regarding Plaintiff's failure to state a claim upon which relief can be granted. (Def. Br. at 7-10; Reply at 4-6).

10